UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| RENEE JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No.: |
| | ) | |
| SGT. ZACH BARRETT, | ) | |
| in his individual capacity, | ) | |
| CPL. THOMPSON, | ) | |
| in his individual capacity, | ) | |
| DEPUTY JACOB PALMER, | ) | |
| in his individual capacity, | ) | |
| DEPUTY MATT HILL, | ) | |
| in his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## **COMPLAINT FOR DAMAGES**

Plaintiff Renee Jones bring this suit for damages under 42 U.S.C. § 1983 against Defendants Sgt. Zach Barrett, Cpl. Thompson, Deputy Matt Hill and Deputy Jacob Palmer for violating Plaintiff's rights under the Fourth and Fourteenth Amendments of the United States Constitution and for violations of Georgia law. In support, Plaintiff offers the following.

1

<u>Parties</u>

1.      Plaintiff  Renee Jones is a United States citizen, resident of Georgia,

and competent to bring this lawsuit.

2.      Defendant Sergeant Zach Barrett is employed as a sergeant with the

Walton County Sheriff's Office. Sgt. Barrett is sued in his individual

capacity. At all times relevant to the complaint, Sgt. Barrett acted

under the color of law.

3.      Defendant Deputy Jacob Palmer is employed as a deputy with the

Walton County Sheriff's Office . Deputy Palmer is sued in his

individual capacity. At all times relevant to the complaint, Deputy

Palmer acted under the color of law.

4.      Defendant Deputy Matt Hill is employed as a deputy with the Walton

County Sheriff's Office . Deputy Hill is sued in his individual

capacity. At all times relevant to the complaint, Deputy Hill acted

under the color of law.

5.      Defendant Corporal Thompson is employed as a corporal with the

Walton County Sheriff's Office . Cpl. Thompson is sued in his

individual capacity. At all times relevant to the complaint, Cpl.

Thompson acted under the color of law.

Jurisdiction and Venue

6.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331

because this case presents a federal question under 42 U.S.C. § 1983

and the Fourth and Fourteenth Amendments of the United States

Constitution.

7.      This Court has supplemental jurisdiction of Plaintiff's state law claims

under 28 U.S.C. § 1367

8.      Upon service of process, this Court acquires personal jurisdiction of

the Defendants under Fed.R.Civ.P. 4(k)(1)(a).

9.      Venue is proper in the Middle District of Georgia under 28 U.S.C. §

1391(b) because all actions complained of occurred within the

boundaries of this district and Defendants reside within this district.

Facts Giving Rise to Plaintiff's Claims

10.     In February 2015, Sheriff Chapman claimed to Sgt. Barrett that he

suspected Plaintiff was buying crack cocaine from "black guys" in

3

Monroe, Georgia. The Sheriff instructed Sgt. Barrett to investigate and to find a way to arrest Plaintiff.

11.    Sheriff Chapman did not have any personal information that Plaintiff was in fact purchasing or using drugs.

12.    Acting in response to the Sheriff's direction, Deputy Barret concocted a plan to, in Sgt. Barrett's words, "pick [Plaintiff] off and take her down."

13.    The Sheriff's February, 2015 statement to Sgt. Barrett set off a chain of repeated attempts to find a justification for arresting Plaintiff. These attempts ultimately culminated in officers employed by the Sheriff paying a private citizen to plant illegal drugs in Plaintiff's car.

14.    On or about February 17, 2015, Sgt. Barrett and Deputy Tallant met with an individual named Rodney Jones to discuss whether Mr. Jones would help them make a case against Plaintiff. Mr. Jones was a known drug user to Sgt. Barrett. Rodney Jones is not related by blood or marriage to Renee Jones.

15.    Mr. Jones stated that he knew Plaintiff and had been to her house

4

previously, but had not seen her for over a year.

16.     Mr. Jones agreed, in exchange for payment of $250, to assist in
building a case against Plaintiff by attempting to sell drugs to Plaintiff
and, if she refused, to plant drugs in her car.   At the time of the
meeting with Mr. Jones, none of the Defendants were aware of any
information reflecting that she was in possession of any illegal drugs
or was using illegal drugs, or seeking to purchase any illegal drugs.

17.     After securing Mr. Jones' agreement to assist in arresting Plaintiff,
Sgt. Barrett, Deputy Tallant, and Cpl. Thompson supplied Mr. Jones
with crack cocaine and marijuana which they had taken from the
Sheriff's Department.

18.     Mr. Jones was then "wired" with a body microphone which, once
activated, enabled Barrett and Tallant to hear the actions and words of
Mr. Jones while he was in the company of the Plaintiff.

19.     The plan concocted by Sgt. Barrett, Cpl. Thompson, and Mr. Jones
was to get the illegal drugs into Renee Jones' possession so that she
could be arrested for drug possession. The plan was that, after arriving

at Plaintiff's house, Mr. Jones would ask Plaintiff to give him a ride, and during the ride Mr. Jones would place drugs in her car. After Plaintiff dropped Mr. Jones off at a predetermined location, Sgt. Barrett would arrange for two other deputies, Deputy Palmer and Deputy Hill, to immediately pull over Plaintiff's car, concoct a justification to search the car, find the drugs planted by Mr. Jones, and arrest her.

20.    Prior to arriving at Plaintiff's house, Sgt. Barrett also instructed Mr. Jones to rub marijuana on the door handle of Plaintiff's car.

21.    The purpose of rubbing marijuana on the door handle of Plaintiff's car was so that officers could later justify searching Plaintiff's car either because they smelled marijuana or because a drug dog alerted to the scent of marijuana.

22.    Cpl. Thompson drove Mr. Jones to Plaintiff's house and dropped him off near Plaintiff's house.

23.    As Cpl. Thompson drove Mr. Jones to Plaintiff's house, Sgt. Barrett coordinated the position of Deputy Hill and Deputy Palmer so they

6

would be ready to pull over Plaintiff's car after Mr. Jones planted the
drugs in her car.

24.     Mr. Jones then walked to Plaintiff's house.

25.     After entering Plaintiff's home, Mr. Jones first attempted to sell the
drugs to Jones. Plaintiff refused to purchase or possess the drugs.

26.     After a conversation with Plaintiff, Mr. Jones then requested that
Plaintiff give him a ride in her car to another location. Plaintiff agreed
to do so.

27.     As Plaintiff and Mr. Jones left Plaintiff's house, Sgt. Barrett radioed to
Deputy Palmer and Deputy Hill and notified them of Jones' location,
path of travel, and confirmed the plan to intercept Plaintiff after Mr.
Jones left her car.

28.     During the car ride with Plaintiff, Mr. Jones placed a cigarette box
containing drugs in the center console of Plaintiff's car.

   a.   Renee Jones did not ask Mr. Jones to place the drugs into her car;

   b.   Renee Jones did not request that Mr. Jones pay her anything – let
alone be given illegal drugs – in return for providing him with a

ride;

  c. At the time that Mr. Jones placed the drugs into the console of

    Plaintiff's car, Barrett knew that Renee Jones had not done

    anything to seek out or procure the drugs from the officers or from

    Mr. Jones and knew that the only reason that the drugs were in her

    car was because Mr. Jones placed the drugs there.

29.  After reaching Mr. Jones's destination, Plaintiff dropped him off and

    continued driving.

30.  Mr. Jones then called Sgt. Barrett and informed Sgt. Barrett that the

    drugs were inside a cigarette pack which was in the center console of

    Plaintiff's car.

31.  Cpl. Thompson picked up Mr. Jones and drove to a separate location

    to meet with Sgt. Barrett and Deputy Tallant.

32.  When Cpl. Thompson picked up Mr. Jones, Mr. Jones informed

    Thompson where the drugs could be found in Plaintiff's car.

33.  The officers then paid Mr. Jones for successfully planting contraband

    in Plaintiff's car and released Mr. Jones.

34.     As Plaintiff continued to drive after dropping off Mr. Jones, she complied with all laws and rules of the road. Plaintiff did not commit any traffic offense.

35.     Sgt. Barrett then radioed to Deputy Palmer and falsely stated that Plaintiff was "all over the road" and that Deputy Palmer should pull her over.

36.     Neither Deputy Palmer nor Deputy Hill witnessed Plaintiff commit any traffic offense.

37.     Sgt. Barrett did not witness Plaintiff commit any traffic offense.

38.     Both Deputy Palmer and Deputy Hill knew that Sgt. Barrett did not witness Plaintiff commit any traffic offense, and that the claim that she was "all over the road" was a false justification to stop her car.

39.     Based on the information obtained from Mr. Jones, Sgt. Barrett also informed Deputy Palmer and Deputy Hill where he could find the drugs in Plaintiff's car.

40.     Based upon the communication from Sgt. Barrett, Deputy Palmer and Deputy Hill effectuated a traffic stop on Plaintiff's vehicle.

9

41.     After stopping Plaintiff, Deputy Palmer ordered her to exit her car.

42.     Deputy Palmer did not have evidence or information that could

support a reasonable belief that Plaintiff was armed or dangerous, or

that Plaintiff exiting her car was necessary for the safety of any

person.

43.     Upon exiting the car and being questioned, Plaintiff denied that her

car contained any drugs or any contraband.

44.     Deputy Palmer then searched Plaintiff's car and quickly located the

contraband which had been deposited by Mr. Jones and arrested

Plaintiff for possession of cocaine and possession of marijuana.

45.     Renee Jones was not charged with a motor vehicle traffic offense by

Deputy Palmer or Deputy Hill.

46.     After her arrest, Deputy Hill transported Plaintiff to the Walton

County Jail where she remained incarcerated for several hours until

she was released after posting a bond.

47.     The Walton County District Attorney's Office charged Plaintiff with

possession of cocaine under OCGA § 16-13-30(a) and misdemeanor

possession of marijuana under OCGA § 16-13-30(j) by filing a criminal accusation. Plaintiff was not charged with any traffic offense.

48.     After Plaintiff's arrest, Sgt. Barrett told Deputy Palmer to write Palmer's police report for Plaintiff's arrest as if it was a normal traffic stop, and to omit any role of Mr. Jones, the other officers, or the plan to plant drugs, or advance knowledge that Plaintiff possessed drugs due solely to Mr. Jones' actions.

49.     The Deputy Palmer was the only officer to write a police report of the incident. That report did not disclose the role of Mr. Jones, or any information learned by any officers from Mr. Jones, nor did the report disclose that Walton County Sheriff's Department personnel were the actual source of the illegal drugs found by Palmer in Plaintiff's car.

50.     Based upon Deputy Palmer's report, it falsely appeared that Plaintiff's arrest was the product of a routine traffic stop and that he had no foreknowledge that drugs had been placed in Plaintiff's car.

51.     After the initiation of Plaintiff's criminal prosecution, Sgt. Barrett met with the assistant district attorney assigned to Plaintiff's case. The

prosecutor asked Sgt. Barrett whether there was any information about

Plaintiff's prosecution that was relevant that was not contained in

Deputy Palmer's report. Sgt. Barrett falsely claimed that all relevant

information was contained in Deputy Palmer's police report. Sgt.

Barrett concealed the role of Mr. Jones, concealed the reverse sting

operation, and concealed the planting of drugs in Plaintiff's car.

52.    On or around June 5, 2015, Sheriff Joe Chapman received a letter

from Mr. Jones who was then incarcerated in the Walton County Jail

53.    The letter declared that "deputies [referring to Walton County

Sheriff's Deputies] gave me drugs (cocaine & weed) to give her

[referring to Renee Jones], they set her up!!!"

54.    On August 29, 2015, the Walton County District Attorney's Office

filed a motion to nolle prosequi Plaintiff's charges after learning that

the officers misrepresented the facts leading to Plaintiff's arrest.

55.    Superior Court Judge John M. Ott granted the prosecution's motion to

dismiss Plaintiff's criminal charges on September 2, 2015.

56.    As a result of Plaintiff's arrest, she suffered a loss of liberty,

humiliation, and emotional distress.

## Count I – Illegal Seizure under 42 U.S.C. § 1983

57.    This Count is alleged against Deputy Palmer, Deputy Hill, and Sgt.

Barrett under 42 U.S.C. § 1983 and the Fourth Amendment of the

United States Constitution for the unlawful seizure of Plaintiff.

58.    Deputy Palmer, Deputy Hill, and Sgt. Barrett each participated in the

decision to stop Plaintiff's car in spite of the fact that no officer

witnessed a traffic violation.

59.    Deputy Palmer, Deputy Hill, and Sgt. Barrett orchestrated the

justification for stopping Plaintiff's car with the sole intention of

searching her car to find drugs planted by Mr. Jones.

60.    The officers involved in the stop of Plaintiff's car did not have

reasonable articulable suspicion or arguable reasonable suspicion that

Plaintiff had committed any traffic offense.

61.    The stop of Plaintiff's car was the proximate cause of the ensuing

search which uncovered the drugs left by Mr. Jones and the arrest of

Renee Jones.

62.     Prior to the date of the stop of Plaintiff's car, clearly established law
        showed that it is unconstitutional under the Fourth Amendment for
        police to initiate a traffic stop absent reasonable articulable suspicion
        that the driver of the car committed a traffic offense or other crime.

### Count II – False Arrest under 42 U.S.C. § 1983

63.     This Count is alleged against Deputy Palmer, Deputy Hill, Sgt.
        Barrett, and Cpl. Thompson under 42 U.S.C. § 1983 and the Fourth
        Amendment of the United States Constitution for the unlawful arrest
        of Plaintiff.

64.     Prior to her arrest, Plaintiff had not committed any traffic offense or
        violated any other law that would authorize her arrest.

65.     In the absence of the planted contraband, there was no probable cause
        or arguable probable cause to support Plaintiff's arrest.

66.     Prior to February of 2015, the decisions of the United States Eleventh
        Circuit Court of Appeals clearly established that an arrest which
        results from fabricated evidence violates the Fourth Amendment of
        the United States Constitution.

67.     Cpl. Thompson, Deputy Palmer, Deputy Hill, Rodney Jones and Sgt.
        Barrett each participated in a scheme to manufacture or concoct or
        contrive to create the facts upon which to charge Renee Jones with
        possession of illegal drugs and, thereafter, directly participated in or
        aided and abetted an effort to conceal evidence from the prosecutor
        handling Plaintiff's criminal case, and each actually concealed
        evidence, and to conceal the true facts about the arrest of Renee Jones
        from the Judge who signed the Plaintiff's arrest warrant and from the
        personnel of the District Attorney's office.

68.     All actions taken by the District Attorney's Office in securing
        Plaintiff's accusation and proceeding with her prosecution were the
        result of the deception and undue influence by Cpl. Thompson,
        Deputy Palmer, Deputy Hill, and Sgt. Barrett.

69.     If Cpl. Thompson, Deputy Palmer, and Sgt. Barrett had disclosed the
        plot to plant evidence through the use of Mr. Jones, the pre-
        determined decision to stop Plaintiff's car, and the search of the car to
        find contraband in the location it was deposited by Mr. Jones,

Plaintiff's case would not have been prosecuted.

70.     Clearly established law shows that it is unconstitutional to predicate

        an arrest on fabricated evidence. *See Riley v. City of Montgomery,*

        *Ala.*, 104 F.3d 1247, 1253 (11th Cir. 1997) ("It was well established in

        1989 that fabricating incriminating evidence violated constitutional

        rights.").

### Count III – Denial of Due Process under 42 U.S.C. § 1983

71.     This Count is alleged against Deputy Palmer, Sgt. Barrett, Deputy

        Hill, and Cpl. Thompson under 42 U.S.C. § 1983 and the Fourteenth

        Amendment of the United States Constitution for withholding

        material and exculpatory evidence prior to and during Plaintiff's

        criminal prosecution.

72.     Following Plaintiff's arrest, Deputy Palmer, Sgt. Barrett, Deputy Hill,

        and Cpl. Thompson knowingly misrepresented the facts of Plaintiff's

        arrest to the prosecution, and failed to disclose exculpatory evidence

        at any stage of Plaintiff's criminal proceedings.

73.     Deputy Palmer, Sgt. Barrett, Deputy Hill, and Cpl. Thompson failed

to disclose the following: (a) neither officer witnessed Plaintiff actually commit a traffic offense; (b) the drugs found in Plaintiff's car had been placed there moments before by Mr. Jones; (c) that Mr. Jones had been paid to place drugs in Plaintiff's car, and that the officers had pre-arranged the planting of drugs and stop and search of Plaintiff's car; (d) that Mr. Jones and the other co-conspirators each had roles in the case prior to Palmer's stop of Renee Jones' car.

74.     The undisclosed evidence constitutes exculpatory and impeachment evidence because it shows that: (a) Deputy Palmer lied in his police report; (b) there was no reasonable articulable suspicion for the stop of Plaintiff's car; and, (c) Plaintiff did not knowingly possess the contraband found in her car.

75.     Upon meeting with the prosecutor assigned to Plaintiff's case, Sgt. Barrett denied or did not disclose any of the facts in the foregoing paragraph. Instead, Sgt. Barrett claimed the case was a simple possession case stemming from a legal traffic stop.

76.     Upon learning of the actual facts of the case, the prosecutor assigned

to Plaintiff's case dismissed Plaintiff's charges.

77.     If the prosecutor had known the actual facts leading to Plaintiff's

arrest, rather than the false information conveyed by Deputy Palmer

and Sgt. Barrett, Plaintiff would not have been charged with any crime

and a formal accusation would not have been filed.

78.     Deputy Palmer, Sgt. Barrett, Deputy Hill, and Cpl. Thompson made a

knowing and willful decision not to disclose material exculpatory and

impeachment information to the prosecution. The decision was not the

product of inadvertence or negligence.

79.     Clearly established law shows that police officers have a duty to

disclose exculpatory information to the prosecution. *See McMillian v.*

*Johnson*, 88 F.3d 1554, 1569 (11th Cir.1996) ("Our case law clearly

established [as of 1987 and 1988] that an accused's due process rights

are violated when the police conceal exculpatory or impeachment

evidence.").

## COUNT IV – Conspiracy under 42 U.S.C. § 1983

80.     This Count is alleged against Deputy Palmer, Deputy Hill, Sgt.

18

Barrett, and Cpl. Thompson under 42 U.S.C. § 1983 for their

participation in a conspiracy to violates Plaintiff's rights secured under

the Fourth and Fourteenth Amendments.

81.    There was an agreement between each Defendant, along with an

agreement of Mr. Rodney Jones, to participate in a scheme designed

to plant drugs on Plaintiff and to conceal any evidence of the scheme

to plant drugs.

82.    Each Defendant understood that Mr. Jones' task was to plant drugs

and that a traffic stop based on false pretenses would serve as the basis

to find those drugs.

83.    Each Defendant understood that information concerning the scheme to

plant drugs, and the actual source of the drugs, would not be disclosed

to the prosecutor handling Plaintiff's case.

84.    Along with Mr. Jones, each Defendant willfully participated in the

conspiracy.

85.    As set out in Counts I through III of this complaint, the actions taken

by Defendants violated Plaintiff's rights under the Fourth and

19

Fourteenth Amendments of the United States Constitution.

86.     Mr. Jones and each Defendants' actions during the course of the conspiracy constitute criminal offenses under 18 U.S.C. §§ 241 and 242.

87.     Defendant's actions during the course of the conspiracy were the proximate cause of Plaintiff's arrest and prosecution.

**COUNT V – False Imprisonment under OCGA § 51-2-70**

88.     This Count is alleged against Deputy Palmer, Deputy Hill, Sgt. Barrett, and Cpl. Thompson under OCGA § 51-2-70 for the false imprisonment of Plaintiff. The actions taken by Defendants Palmer, Hill, Barrett and Thompson surrounding the planting of drugs in Plaintiff's car deprived Plaintiff of her right to be free from False Imprisonment in accordance with Georgia law.

89.     The officers acted with actual malice and the deliberate intent to do wrong as evidenced by their collective decision to illegally plant illegal drugs in Plaintiff's car, write a false police report, and to conceal evidence from the prosecutor assigned to Plaintiff's case.

## COUNT VI – Malicious Prosecution under OCGA § 51-7-40

90.    The actions taken by Defendants Palmer, Barrett, Hill and Thompson deprived Renee Jones of her right to be free from malicious prosecution in accordance with Georgia law.

91.    Defendants' actions were the proximate cause of the initiation of criminal proceedings against Plaintiff.

92.    If Defendants had disclosed the exculpatory evidence withheld from the prosecution, the prosecutor would not have charged Plaintiff with any crime.

93.    Plaintiff's prosecution caused her humiliation and emotional distress following her release from jail.

## COUNT VII – Attorney's Fees under OCGA § 13-6-11

94.    This count is alleged against all Defendants under OCGA § 13-6-11.

95.    Plaintiffs are entitled to recover expenses personally of litigation under OCGA § 13-6-11 because Defendants have acted in bad faith, been stubbornly litigious, and/or caused Plaintiffs unnecessary trouble and expense.

96.     OCGA § 13-6-11 applies to tort actions arising under State law.

*Request for Relief*

WHEREFORE, Plaintiff requests this Court:

a.      hold a trial by jury on all issues so triable;

b.      Award nominal, compensatory and punitive damages against

Defendants in their individual capacities in an amount to be proven at

trial;

c.      Award Plaintiffs attorney's fees under 42 U.S.C. § 1988;

d.      Award Plaintiff attorney's fees under OCGA § 13-6-11;

e.      Grant such other and further relief as this Court deems just and proper.

Respectfully submitted, this 23rd day of January, 2016.

s/Brian Spears                          s/Jeffrey R. Filipovits
G. Brian Spears                         Jeffrey R. Filipovits
Georgia Bar No. 670112                  Georgia Bar No. 825553

1126 Ponce de Leon Avenue               FILIPOVITS LAW, PC
Atlanta, Georgia 30306                  2900 Chamblee-Tucker Road
Phone: 404-872-7086                     Building 1
Fax: 404-892-1128                       Atlanta, Georgia 30341
bspears@mindspring.com                  Phone: 770-455-1350
                                        jeff@law.filipovits.com